# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOHN S. PISCOTTY,

        Plaintiff,

v.                                                                           CIV 99-993 BB/KBM

PRUDENTIAL SECURITIES, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Compel Arbitration of Plaintiff's State Law Claims *(Doc. 8)*. The Court has reviewed the motion, the memoranda submitted by the parties and the relevant authorities. The Court finds that motion is well taken in part and will be granted in part. Specifically, the Court grants Defendant's motion to compel arbitration of Plaintiff's state law claims; however, the Court denies Defendant's request to stay proceedings in this action on Plaintiff's remaining age discrimination claim.

### A. Factual Background

Plaintiff ("Piscotty") worked for Defendant ("Prudential") as a Financial Advisor In Training from 1993 to October 1996. His involvement in the training program ended early, apparently because he was performing well. *Piscotty Affidavit* ¶¶ 2, 5. Piscotty continued as a Financial Advisor at Prudential's Albuquerque office until December 21, 1998. The parties agree that Prudential fired Piscotty that day, claiming that Piscotty had engaged in "unsuitable trading in customer accounts."

As a condition of employment, Prudential had required Piscotty to sign two documents relevant to the present motion. When Piscotty began his employment with Prudential, he signed a Financial Advisor in Training Agreement ("FAIT") requiring that "[a]ny and all disputes arising out of any matter contained in this Agreement including, without limitation, matters related to my employment or any termination thereof, shall be submitted to and settled by arbitration . . . ." *Declaration of Christopher P. Nelson (Declaration), Exh. A § 5*.

Piscotty also executed a Form U-4 to register as a representative of Prudential with the National Association of Securities Dealers, Inc. (NASD), and apparently also with the New York Stock Exchange (NYSE). In executing the Form U-4, Piscotty agreed "to arbitrate any dispute, claim or controversy that may arise between me and my firm . . . that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register . . . ." *Declaration ¶5, and Exh. C*. NASD's Code of Arbitration Procedure, Rule 10201(a), requires arbitration of "a dispute, claim or controversy . . . between or among members and/or associated persons . . . arising out of the employment or termination of employment of such associated person(s)" when a member such as Prudential invokes arbitration. *Declaration Exh. F*.

After Prudential fired Piscotty, he filed the present lawsuit. His complaint alleges a federal claim under the Age Discrimination in Employment Act (ADEA) and five state law claims. His state law claims include breach of implied employment contract, breach of covenant of good faith and fair dealing, tortious interference with prospective business relations, defamation, and a New Mexico statutory wage claim. Prudential seeks to arbitrate Piscotty's state law claims, but not his ADEA claim. *Prudential's Motion to Compel Arbitration, ¶ 4*.

### C. Discussion

The parties appear to agree in general terms, that the Federal Arbitration Act applies to Piscotty's agreements to arbitrate. *See* 9 U.S.C. §§ 2-4 (providing that written agreements to arbitrate are enforceable and providing the means to enforce the agreements). The dispute specifically centers around whether the agreements are enforceable. Piscotty argues that the arbitration agreements are not enforceable because: (1) they are ambiguous; (2) they unconscionably deprive him of a forum for his state law claims; and (3) the FAIT agreement was not in effect when Piscotty's employment ended with Prudential. Prudential contends that not only is the agreement to arbitrate enforceable, Plaintiff's ADEA claim should be stayed during the pendency of the arbitration proceedings.

### *1. A Magistrate Judge has authority to decide this motion*.

Under the Federal Magistrates Act, 28 U.S.C. § 636(b), a district judge may designate a magistrate judge to determine any pretrial matter pending before the court except for eight enumerated exceptions. Federal Rule of Civil Procedure 72 characterizes those eight enumerated matters in § 636 as "dispositive motions." In *Haggard v. CCC Autobody Systems*, No. CIV 98-1038 LH/LCS (Slip Op. D.N.M. filed 10/23/98), District Judge Hansen determined that a magistrate judge's order remanding the case to state court was not dispositive under Rule 72 or the Federal Magistrates Act because it was analogous to granting a motion to transfer. *Id.* at 9 (relying on *Daniel v. American Bd. of Emergency Medicine*, 988 F. Supp. 127 (W.D.N.Y. 1997)). Judge Hansen reasoned that the remand order, like a transfer order, did not dispose of the case itself although it did eliminate federal court jurisdiction over the case. *Haggard* at 8. Thus, the magistrate judge had authority to order the remand. *Id.* at 9.

Likewise in the present case, an order compelling arbitration does not dispose of

3

Piscotty's state law claims. Rather, the order simply transfers those claims to an arbitral forum. An order compelling arbitration is not a decision on a dispositive motion as Rule 72 of the Federal Rules of Civil Procedure comprehends the term. Thus, I have authority to consider and decide the motion.

### 2. *The agreement to arbitrate is not ambiguous*.

Piscotty argues that the Form U-4 arbitration clause is invalid for being ambiguous.[1] To support this assertion, Piscotty notes that the Form U-4 binds him to arbitrate under the rules of the NASD and NYSE, which he claims are unclear and uncertain as to how much he might have to pay in arbitration fees. Piscotty's argument misses the mark. The question whether the *arbitration agreements* are ambiguous is distinct from whether the rules under which arbitration occurs are unclear or uncertain. "A contract is ambiguous if it is reasonably and fairly susceptible to different constructions." *Monette v. Tinsely*, 126 N.M. 748, 751, 975 P.2d 361, 364 (1999) (holding that no ambiguity existed on whether parties agreed to arbitrate regardless of whether procedure for arbitration was unclear). Here there is but one interpretation to the arbitration clauses at issue – the parties agreed to arbitrate any disputes, and specifically disputes arising from employment or termination.

*Paladino v. Avnet Computer Tech., Inc.*, 134 F.3d 1054 (11th Cir. 1998), provides little

---

[1] Prudential asserts that the FAIT Agreement is enforceable because under New York law it survives its own termination for resolution of disputes arising from the agreement. *See Primex International, Inc. v. Wal-Mart Stores, Inc.*, 679 N.E. 2d 594, 598-99 (N.Y. 1997). The FAIT Agreement contains a clause that chooses New York law to govern. *(Declaration Exh. A, § 6(a))* Rather than engage in a question-begging analysis, however, without enough facts to determine whether the present dispute "arose out of the FAIT agreement," the Court declines to address this the validity of the FAIT agreement at this time. In any event, the Court concludes that the Form U-4 arbitration agreement represents a valid and enforceable agreement to arbitrate, sufficient to bind Piscotty.

4

support to Piscotty's ambiguity argument. The agreement in *Paladino* was ambiguous because in one phrase it purported to cover 'any controversy or claim arising out of or relating to' the plaintiff's employment or termination, while in another phrase, it limited the authority of arbitrators to award damages for 'breach of contract only.' *Id.* at 1056. *Paladino* presents true ambiguity, with the agreement susceptible to different constructions, unlike the present case in which the agreements exclude nothing from arbitration.

In fact, the agreements here were clear enough to alert Piscotty to the risk that he might have to pay some of the arbitration fees, a substantial portion of them, or conceivably all. While this fact may represent a gamble Piscotty would have to take to vindicate his claims, and some uncertainty as to the cost of arbitration, there is no doubt as to the fact that he agreed to arbitrate. Again, uncertainty as to the outcome on costs poses a question separate from whether Piscotty unambiguously agreed to arbitrate, which is unmistakable.

### *3. Requiring arbitration would not unconscionably deprive Piscotty of a forum*.

As a general proposition, "agreements to arbitrate statutory claims are enforceable as long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum . . . ." *Shankle v. B-G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999) (*quoting Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)). The broad language in the arbitration provisions such as "any and all disputes" and simply "disputes" without reservation or limitation, indicate that Piscotty will not forego assertion of his state statutory or common law claims by submitting them to arbitration. Rather, Piscotty argues that the arbitration clauses here effectively deprive him of a forum for such claims because he *may* be required to pay certain costs associated with the arbitration. *Piscotty's Response at 6*.

5

Piscotty relies on the Tenth Circuit *Shankle* decision without avail. Shankle, the plaintiff in that case, had signed an arbitration agreement that *required* him to pay half the arbitrator's fees to resolve his claims, which would have been between $1,875 and $5,000. The Tenth Circuit determined that this requirement, in essence, deprived the plaintiff – a janitor – of a forum to resolve his statutory rights. 163 F.3d at 1235.

Three distinctions are immediately obvious between *Shankle* and the present case. First, nothing in the agreements here or the applicable rules requires Piscotty to pay any sum certain, and in fact he may have to pay nothing. Second, the mere possibility of having to pay some or all the arbitration fees does not deny Piscotty a forum for addressing his state law claims, and none of the arbitration rules limit any of Piscotty's substantive rights. Even Prudential acknowledges that Piscotty has recourse to vacatur and confirmation provisions of the Federal Arbitration Act if he finds himself aggrieved by an assessment of the fees. *Prudential's Amended Reply 3*. Finally, Piscotty, an apparently well educated financial advisor capable of making a six figure income, is in a far different position from the *Shankle* plaintiff.

It is also noteworthy that *Shankle* arrived at its holding by distinguishing its facts from *Cole v. Burns Intern. Security Servs.*, 105 F.3d 1465 (D.C. Cir. 1997). *See Shankle*, 163 F.3d at 1235, n. 6. Specifically, *Cole* upheld an arbitration agreement's validity by interpreting its ambiguity – the absence of terms addressing the question of arbitration fees – against the drafter. 105 F.3d at 1485-86. In the present case there is no ambiguity, only uncertainty in amount, that either or both of the parties may have to pay none, some, or all of the arbitration fees. Based on the foregoing precedents and the facts of this case, Piscotty has not been deprived of a forum to resolve his statutory claims.

Moreover, the agreement to arbitrate is not unconscionable. "When its terms are unreasonably favorable to one party, a contract may be held to be substantively unconscionable. However, the threshold for such a holding is very high, as the terms must be such as no man in his senses and not under delusion would make on the one hand, and ... no honest and fair man would accept on the other." *Monette*, 126 N.M. at 752 (citations and internal quotations omitted). Here, the Form U-4 clearly binds both parties to the same obligations and subjects them to the same risks as far as payment of the arbitration fees. Nothing prevents Prudential from having to pay all the fees even if Piscotty loses.

Furthermore, to the extent that Piscotty contends that it would be unconscionable, Prudential appears to have waived any right it may have to require that the arbitration take place in New York. Defendant has expressly informed the Court that it has not insisted on enforcement of the forum provision as it concerns the FAIT agreement, and there appears to be no comparable provision under the Form U-4. *Prudential's Amended Reply 7, n. 5, Declaration Exh. B, ¶ 5*. As such, the arguable unenforceability of the forum selection clause need not be addressed.

### *4. Piscotty's ADEA claim should not be stayed*.

Where resolution of arbitrable claims will have a preclusive effect on, and predominate over, the claims subject to litigation, the federal district court should consider staying the federal court litigation pending the outcome of arbitration. *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 785 (10th Cir. 1998). Nevertheless, piecemeal litigation resulting from a combination of arbitrable and non-arbitrable issues is not alone reason to stay the entire case. *Id*. (*citing Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1517 (10th Cir. 1995)). Here, Piscotty's federal age discrimination claim is sufficiently distinct from his state contract and

7

tort claims, that the State claims do not predominate or threaten to have any preclusive effect over it. Therefore, the Court concludes that staying the proceedings on Piscotty's ADEA claim would be inappropriate, and therefore declines to do so.

Wherefore,

IT IS HEREBY ORDERED that Prudential's Motion to Compel Arbitration of Plaintiff's State Law Claims *(Doc. 8)* is GRANTED.

IT IS FURTHER ORDERED that Defendant's request to stay federal litigation of Piscotty's ADEA claim during the pendency of the arbitration is DENIED.

_____
UNITED STATES MAGISTRATE JUDGE

**Attorneys for Plaintiff:**

Christopher Moody
Anne Marie Turner
Noeding & Moody, P.C.
Albuquerque, NM

**Attorneys for Defendant:**

Patrick J. Rogers
Modrall, Sperling, Roehl,
Harris & Sisk, P.A.
Albuquerque, NM